UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY BURDETTE TUTEN,

    Plaintiff,

v.   Case No. 8:21-cv-2397-WFJ-AAS

CHRIS NOCCO,

    Defendant.
_____/

## ORDER

Before the Court are Defendant Sheriff Chris Nocco's motion to dismiss (Doc. 22) and Plaintiff Mr. Tuten's opposition (Doc. 24). The Court grants the motion.

I. BACKGROUND

When he filed his complaint under 42 U.S.C. § 1983, Mr. Tuten was a pre-trial detainee at the Pasco County Jail (PCJ). Currently, he is an inmate in the custody of the Florida Department of Corrections. He named as defendants to this action Chris Nocco, the Sheriff of Pasco County, Florida, twenty employees of the Pasco County Sheriff's Office, and Home Wav, L.L.C. (Home Wav), a private corporation that provides video visitation devices at PCJ. An earlier order dismissed Home Wav and the twenty employees from this action, and Mr. Tuten's claims for compensatory damages and injunctive relief (See Doc. 9). Thus, only Mr. Tuten's claim that Sheriff

Nocco (in both his individual and official capacities) violated his right to bodily privacy under the Fourth Amendment, and request for punitive damages, remain.[1]

## II. ALLEGATIONS OF THE COMPLAINT (Doc. 1)

Mr. Tuten alleges that in "Charlie" Dorm at PCJ, the "shower area" can be seen by security cameras and a camera used for video visits between visitors and inmates. On November 14, 2020, a female visitor saw Mr. Tuten and another inmate, Bruce William Rogers, naked in the "shower area" during her video visit with another inmate, Joey Allen Deese. Nothing was done to "remedy the issue," even after Mr. Tuten submitted multiple grievances and family members of inmates called PCJ. Instead, Mr. Tuten was told to dress behind the shower curtain, which "soiled" his clean clothes. Finally, Mr. Tuten complains the security cameras allow security staff (male and female) to observe him and other detainees and inmates in the "shower area" and while using the toilets. "Having to shower and defecate on video camera" has caused Mr. Tuten mental anguish, embarrassment, humiliation, and post-traumatic stress disorder.

## III. DEFENDANT'S MOTION TO DISMISS (Doc. 22)

Sheriff Nocco moves under Rule 12(b)(6), Fed.R.Civ.P., to dismiss the complaint. He argues: 1) the claims against him in his official capacity must be dismissed because Mr. Tuten has failed to demonstrate either the existence of an

---

[1] Mr. Tuten failed to file an amended complaint, despite the opportunity to do so (See Doc. 9 at 6).

- 2 -

underlying constitutional violation, or that his policy, custom, or widespread practice caused Mr. Tuten constitutional injury; 2) to the extent he is sued in his individual capacity, he is entitled to qualified immunity; 3) punitive damages are not available against him in his official capacity; and 4) the action must be dismissed under Rule 4(m), Fed.R.Civ.P., because the complaint was not served within 90 days after it was filed.

IV. MR. TUTEN'S RESPONSE (Doc. 24)

In his response to the motion to dismiss, Mr. Tuten asserts service was untimely because "Sheriff Nocco was unavailable to be reached by U.S. mail and certified mail." He also makes factual allegations not raised in the complaint, including that 1) there were several incidents where, presumably, he was observed naked in the shower area; and 2) only two of the six showers had curtains, and "the curtains. . .were always in torn and ruined condition." And he argues "Sheriff Nocco is a policy maker and oversees everything that happens at the jail" and is liable for the actions of his employees. Finally, he argues because the visitation cameras were changed to "create a blurry background," it is apparent his constitutional right to bodily privacy was violated when the visitor saw him naked in the shower area.

V. STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the court accepts the well-pleaded allegations in the complaint as true and

construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). While the allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff, *Welch v. Laney*, 57 F.3d 1004, 1008 (11th Cir. 1995), the plaintiff must make more than vague and conclusory assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 663-664 (2009). The "Twombly-Iqbal plausibility standard" defines what a well-pled complaint must contain for the allegations to be accepted as true. The origin of the plausibility standard was articulated by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), when it held that a complaint must contain sufficient factual matters to state a claim plausible on its face. *Id*. at 570. Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, however, are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

To be considered plausible a complaint must contain facts that "allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. at 674. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- but it has not 'show[n]'- 'that the pleader is entitled to relief.' " *Id*. at 679, citing Fed.R.Civ.P. 8(a)(2). Moreover, "[w]hen faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether

plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred." *Swick v. Dep't of Corr.*, 2011 WL 772780, at *1 (S.D. Fla. Feb. 7, 2011), citing *Iqbal*. It is by this plausibility standard that the complaint is analyzed.

VI. ANALYSIS

    A. Motion to dismiss for failing to timely serve complaint

Sheriff Nocco moves under Rule 4(m), Fed.R.Civ.P., to dismiss the complaint because he was not served with process within 90 days after the complaint was filed. Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Rule 4(m), Fed.R.Civ.P.

Mr. Tuten has shown good cause why service was not made within 90 days. He is proceeding *pro se* and *in forma pauperis* and therefore relied upon the court to issue a service order, and the Marshal to effect service. *See* 28 U.S.C. § 1915(d) (where a plaintiff is proceeding *in forma pauperis*, "the officers of the court shall issue and serve all process, and perform all duties in such cases"). Mr. Tuten timely complied with all

court orders and deadlines and had nothing to do with any delay in service. Therefore, dismissal for failure to timely serve process is not warranted.

B. Claim that security cameras allowed officers to see detainees in shower area and using the toilets

Mr. Tuten alleges his right to bodily privacy was violated because there was a security camera "mounted directly across from the restroom and shower area facing the toilets" that allowed "men and women working security" to see detainees "in diffrent [sic] states of undress" and "relieving" themselves (Doc. 1, docket pp. 9-10).

Pretrial detainees have a limited constitutional right to bodily privacy. *Cf. Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir.1993) (finding right as to prisoners). *See also, Mitchell v. Stewart*, 608 F. App'x 730, 735 (11th Cir. 2015) ("The rights of arrestees are surely as substantial as those of inmates."). This limited right includes a prisoner's right to bodily privacy from the involuntary exposure of his genitals in the presence of members of the opposite sex. *Caffey v. Limestone Cnty., AL*, 243 F. App'x 505, 508 (11th Cir. 2007) (citing *Fortner*). But this kind of involuntary exposure does not automatically constitute a constitutional violation. The Court considers whether a legitimate law enforcement purpose exists for the involuntary exposure. *See Fortner*, 983 F.2d at 1030 ("When a prison regulation or policy 'impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987))).

There is no allegation that any prison staff of the opposite sex saw Mr. Tuten undressed in the shower area or using a toilet. At best, he alleges a security camera was positioned in an area that allowed security staff to see detainees and prisoners while in the shower area and using the toilets (Doc. 1, docket p. 10). This allegation is insufficient to state a claim for a violation of his privacy rights. *See Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (conclusory and speculative allegations are not entitled to an assumption of truth in determining whether a complaint states a claim upon which relief may be granted); *Bracey v. Price*, 2012 WL 6015727, at *17 (W.D. Pa. Dec. 3, 2012) ("Occasional viewing of inmates while showering or using toilet facilities has been held to be appropriately within the parameters of maintaining institutional security and therefore, constitutional." (citing *Timm v. Gunter*, 917 F.2d 1093 (8th Cir.1990), *cert. den.*, 501 U.S. 1209 (1991)). Thus, to the extent the complaint alleges Mr. Tuten's constitutional rights were violated because a security camera allowed prison staff to see in the shower and toilet areas, the claim must be dismissed without prejudice.[2]

---

[2] Even had Mr. Tuten alleged a female officer saw him undressed in the shower area or using the toilet, his claim likely would have been subject to dismissal. *See, e.g., Caldwell v. Bentley*, 2015 WL 1198608, at *33-35 (M.D. Ala. Mar. 16, 2015) (granting defendants summary judgment on prisoner's claim that his right to bodily privacy was infringed because female correctional officers were given job assignments in areas where they have occasion to view prisoner naked; the policy of allowing female correctional officers unrestricted access to areas of prisons where they occasionally view male prisoners in various stages of undress is reasonably related to valid penological goals, including "institutional security and equal employment opportunities for female officers.").

C. Claim against Sheriff Nocco in his individual capacity

Mr. Tuten sues Sheriff Nocco in both his individual and official capacities (Doc. 1, p. 2). To the extent Mr. Tuten brings an individual-capacity claim against Sheriff Nocco, it appears he names Sheriff Nocco based on the supervisory nature of his position–Sheriff of Pasco County–without alleging facts he had any personal involvement in violating his constitutional rights.  The standard for which a supervisor is held liable is "extremely rigorous" - supervisors can be held liable when "'the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)). A causal connection may be shown by evidence of 1) "a custom or policy that results in deliberate indifference to constitutional rights"; 2) "facts that support an inference that the supervisor [ ] directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so"; or 3) "a history of widespread abuse that notified the supervisor of the need to correct the alleged deprivation. . . ." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (citing *West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007)).

Mr. Tuten fails to allege sufficient facts showing that Sheriff Nocco directly participated in unconstitutional conduct or that a causal connection exists between

Sheriff Nocco's actions and a constitutional violation. He alleges that "[e]very listed Defendant was shown by me. . .and [Inmate Rogers] that you can see directly into the shower area" (Doc. 1, docket p. 8). This vague allegation does not establish either that Sheriff Nocco personally participated in the alleged constitutional violation or a causal connection between his actions (or inactions) and the constitutional violation. Mr. Tuten alleges no facts showing when and how he or Inmate Rogers informed Sheriff Nocco that detainees could be seen in the "shower area" by visitors during video visitations. *See Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir.1984) ("[M]ore than mere conclusory notice pleading is required. . . .[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."); *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir.1998) (a complaint must allege the relevant facts "with some specificity."). And Mr. Tuten identifies only a single incident (November 14, 2020) of alleged unconstitutional conduct,[3] which establishes neither a custom or policy nor widespread abuse.[4] *See Keith v. DeKalb*

---

[3] Mr. Tuten alleges on June 24, 2021, he "was getting dressed in the shower area and was given a [disciplinary report] for exposing [himself.]" (Doc. 1, docket p. 9). The allegation is too vague to infer that the incident involved the involuntary exposure of Mr. Tuten's genitals to a visitor using the video visitation system at PCJ.

[4] In his response to Sheriff Nocco's motion to dismiss, Mr. Tuten contends there were "several occurrences." (Doc. 24, docket p. 1). This allegation was not made in the complaint, and Mr. Tuten may not cure the deficiency in his response to the motion to dismiss. *See Burgess v. Religious Tech. Center, Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir.2009) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss.").

*County, Georgia*, 749 F.3d 1034, 1048 (11th Cir.2014) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.") (citation omitted). Finally, Mr. Tuten alleges no facts to support an inference Sheriff Nocco directed his subordinates to violate Mr. Tuten's constitutional rights or knew his subordinates would do so and failed to stop them. Mr. Tuten therefore fails to state a claim upon which relief can be granted against Sheriff Nocco in his individual capacity. Accordingly, the claim is dismissed without prejudice.

D. Claim against Sheriff Nocco in his official capacity

Mr. Tuten's claims against Sheriff Nocco in his official capacity may be dismissed because a lawsuit against a state official in his official capacity is not a suit against the official but is actually a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Mr. Tuten's claims against Sheriff Nocco in his official capacity are actually against the sheriff's office as a whole and the government entity it represents.

"A governmental entity is not liable under § 1983, merely as a matter of *respondeat superior*, for constitutional injuries inflicted by its employees." *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) (citation omitted). A local government is, however, liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury[.]" *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

The well-traveled *Monell* doctrine requires a plaintiff to demonstrate that an official "policy or custom" was the "the moving force of the constitutional violation." *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)). Here allegations relating to a policy are lacking.

A custom supports municipal liability if it is "a longstanding and widespread practice." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). "'Proof of a single incident of unconstitutional activity is not sufficient to impose liability' against a municipality." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion)).

Sheriff Nocco argues that Mr. Tuten fails to allege a custom because the complaint identifies "one single incident" which "does not support *Monell* liability." (Doc. 22, p. 10). The Court agrees. The complaint alleges a single incident on November 14, 2020, when Mr. Tuten and Mr. Rogers were observed naked by a female visitor using the video visitation system. It does not allege that Mr. Tuten was observed naked in the shower area by a female visitor on multiple occasions or that other detainees or prisoners were observed naked there by visitors on prior occasions giving rise to a persistent and widespread practice. Mr. Tuten, therefore, fails to allege

an unconstitutional custom. Accordingly, any claims brought by Mr. Tuten against Sheriff Nocco in his official capacity must be dismissed without prejudice under Fed. R. Civ. P. 12(b)(6).

E. Claim for punitive damages

Sheriff Nocco argues that to the extent Mr. Tuten seeks punitive damages from him in his official capacity (see Doc. 1, docket p. 11), punitive damages are not available (Doc. 22, p. 13). The Court agrees. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Colvin v. McDougall*, 62 F.3d 1316, 1319 (11th Cir. 1995); *Brooks v. Jenne*, 2005 WL 5488060, at *4 (S.D. Fla. July 15, 2005) (finding punitive damages unavailable against Broward County Sheriff in his official capacity). Accordingly, Mr. Tuten's request for punitive damages against Sheriff Nocco in his official capacity is dismissed with prejudice.

VII. CONCLUSION

Based on the foregoing, Sheriff Nocco's motion to dismiss (Doc. 22) is **GRANTED**. Mr. Tuten's complaint (Doc. 1) is **DISMISSED** without prejudice.[5] Mr. Tuten has thirty (30) days to file a clearly labeled Amended Complaint on the court form in compliance with this Order. The Clerk shall mail a court-approved form for filing a civil rights complaint by a prisoner to Mr. Tuten with his copy of this Order.

---

[5] *See Taylor v. McSwain*, 335 F. App'x. 32, 33 (11th Cir. 2009) (error to dismiss complaint by a *pro se* litigant with prejudice without first giving the plaintiff an opportunity to amend the complaint if a more carefully drafted complaint might state a claim).

This case number should be written on the form. If Mr. Tuten fails to timely file an amended complaint, this action will be dismissed without further notice.

ORDERED in Tampa, Florida, on October 27, 2022.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

SA: sfc
Copies to:
Terry Burdette Tuten, *pro se*
Counsel of Record